**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| HARRINGTON WATT and GRACE WATT,<br>Petitioners,<br>v.<br>PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION; PAUL J. ROBERTI, in his official capacity as Administrator of the Pipeline and Hazardous Materials Safety Administration; UNITED STATES DEPARTMENT OF TRANSPORTATION; and SEAN DUFFY, in his official capacity as Secretary of Transportation,<br>Respondents. | No. 26-1317 |

**PETITION FOR REVIEW**

Under 49 U.S.C. § 5127(a), Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15, Harrington Watt and Grace Watt petition the Court for review of the administrative determination of preemption issued by the Pipeline and Hazardous Materials Safety Administration (PHMSA) and published as Hazardous Materials: Notice of Administrative Determination of Preemption for Common Law Tort Claims Concerning the Transportation of Gasoline, Preemption Determination No. PD-42(R), Docket No. PHMSA-2025-0777, 91 Fed. Reg. 57,439 (Sept. 9, 2026) (PD-42(R)). PHMSA's Chief Counsel issued PD-42(R) on September 4, 2026, on the application of Exxon Mobil Corporation. A copy is attached as Exhibit A.

Petitioners joined a petition for reconsideration of PD-42(R) filed with PHMSA's Chief Counsel on September 29, 2026 (Docket No. PHMSA-2025-0777-0038). On November 6, 2026, before filing this petition, they withdrew from that petition, and no request by Petitioners for reconsideration of PD-42(R) is pending before the agency. Their notice of partial withdrawal, with proof of filing, is attached as Exhibit B.

Petitioners ask the Court to set aside PD-42(R), in whole or in part, and to grant any further relief that is appropriate. *See* 49 U.S.C. § 5127(c).

Truckers Movement for Justice has also petitioned this Court for review of PD-42(R). *Truckers Movement for Just. v. Pipeline & Hazardous Materials Safety Admin.*, No. 26-1315 (D.C. Cir. filed Nov. 6, 2026). Petitioners ask that this petition be consolidated with that case.

**Exhibits**

A. Hazardous Materials: Notice of Administrative Determination of Preemption for Common Law Tort Claims Concerning the Transportation of Gasoline, Preemption Determination No. PD-42(R), Docket No. PHMSA-2025-0777, 91 Fed. Reg. 57,439 (Sept. 9, 2026)

B. Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt, Docket No. PHMSA-2025-0777 (filed Nov. 6, 2026), with proof of filing

Dated: November 6, 2026 Respectfully submitted,

LOCKS LAW FIRM

/s/ Andrew J. DuPont

Andrew J. DuPont
Kevin McGilloway
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, Pennsylvania 19106
(215) 893-3425 · (215) 893-0100
adupont@lockslaw.com
kmcgilloway@lockslaw.com

Anthony P. Mastroianni
20 West 36th Street, 12th Floor
New York, New York 10018
(212) 838-3333
amastroianni@lockslaw.com

Counsel for Petitioners Harrington Watt and Grace Watt

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I filed the Petition for Review, with Exhibits A and B, with the Clerk of the Court through the Court's CM/ECF system. The Clerk serves the respondents. Fed. R. App. P. 15(c); *see* 49 U.S.C. § 5127(b).

On November 6, 2026, I also sent copies by certified mail, return receipt requested, and, to the Chief Counsel, by email, to the following:

The Honorable Sean Duffy
Secretary of Transportation
U.S. Department of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590

Paul J. Roberti
Administrator
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
East Building, 1200 New Jersey Avenue SE
Washington, DC 20590

Keith J. Coyle, Chief Counsel
(copy to Patrick Doyle)
Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
East Building, PHC-1
1200 New Jersey Avenue SE
Washington, DC 20590-0001
phmsachiefcounsel@dot.gov

Gregory Zerzan, General Counsel
Office of the General Counsel
U.S. Department of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590

The Honorable Todd Blanche
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

I also sent a courtesy copy for Docket No. PHMSA-2025-0777 to the Docket Operations Facility (M-30), U.S. Department of Transportation, West Building

Ground Floor, Room W12-140, 1200 New Jersey Avenue SE, Washington, DC 20590.

On November 6, 2026, I served a copy of the Petition for Review, with Exhibits A and B, by first-class United States mail, postage prepaid, on each party admitted to participate in the proceeding before PHMSA, other than the respondents, and on the other persons listed in the attached List of Persons Served, at the addresses shown there. Fed. R. App. P. 15(c)(1)–(2).

/s/ Andrew J. DuPont
Andrew J. DuPont
Counsel for Petitioners

## LIST OF PERSONS SERVED

Fed. R. App. P. 15(c)(2)

Each person listed below was served with the Petition for Review, with Exhibits A and B, by first-class United States mail, postage prepaid, on November 6, 2026.

Ilana H. Eisenstein
Counsel for Exxon Mobil Corporation
DLA Piper LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103

The Honorable Bruce J. Kaplan
Civil Presiding Judge
Middlesex County Courthouse
56 Paterson Street
New Brunswick, NJ 08901

Jeffrey Kluger
McGivney, Kluger, Clark & Intoccia, P.C.
290 W. Mt. Pleasant Avenue, Suite 4200
Livingston, NJ 07039

U.S. Chamber of Commerce
Attn: John Drake, Vice President,
Transportation, Infrastructure, and Supply
Chain Policy
1615 H Street NW
Washington, DC 20062-2000

American Fuel & Petrochemical
Manufacturers
1800 M Street NW, Suite 900 North
Washington, DC 20036

Western States Petroleum Association
1415 L Street, Suite 900
Sacramento, CA 95814

International Brotherhood of Teamsters
25 Louisiana Avenue NW
Washington, DC 20001

Montana Department of Justice
Attn: Austin Knudsen, Attorney General
P.O. Box 201401
Helena, MT 59620-1401

Office of the Attorney General of Alabama
Attn: Steve Marshall, Attorney General
501 Washington Avenue
Montgomery, AL 36104

Alaska Department of Law
Attn: Cori Mills, Acting Attorney General
(PHMSA-2025-0777)
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501

Office of the Arkansas Attorney General
Attn: Tim Griffin, Attorney General
323 Center Street
Little Rock, AR 72201

Office of the Attorney General of Florida
Attn: James Uthmeier, Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050

Office of the Attorney General of Georgia
Attn: Chris Carr, Attorney General
40 Capitol Square SW
Atlanta, GA 30334

Office of the Attorney General of Iowa
Attn: Brenna Bird, Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319

Office of the Indiana Attorney General
Attn: Todd Rokita, Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204

Office of the Attorney General of Kentucky
Attn: Russell Coleman, Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

Louisiana Department of Justice
Attn: Liz Murrill, Attorney General
1885 North Third Street
Baton Rouge, LA 70802

Office of the Nebraska Attorney General
Attn: Mike Hilgers, Attorney General
1445 K Street, Room 2115
P.O. Box 98920
Lincoln, NE 68508

Office of the Attorney General of North Dakota
Attn: Drew Wrigley, Attorney General
600 East Boulevard Avenue
Department 125
Bismarck, ND 58505-0040

Office of the Oklahoma Attorney General
Attn: Gentner F. Drummond, Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Office of the Attorney General of South Carolina
Attn: Alan Wilson, Attorney General
P.O. Box 11549
Columbia, SC 29211

Office of the Attorney General of South Dakota
Attn: Marty Jackley, Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501

Office of the Utah Attorney General
Attn: Derek Brown, Attorney General
P.O. Box 142320
Salt Lake City, UT 84114-2320

Office of the Attorney General of West Virginia
Attn: John B. McCuskey, Attorney General
State Capitol Complex, Building 1, Room E-26
1900 Kanawha Boulevard East
Charleston, WV 25305

Claire Taigman
Megan M. Hunter
Earthjustice
311 South Wacker Drive, Suite 1400
Chicago, IL 60606

GPA Midstream Association
6060 American Plaza, Suite 700
Tulsa, OK 74135

Office of the Attorney General of Rhode Island
Attn: Nicholas Vaz, Special Assistant Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, RI 02903

Office of the Attorney General of New Jersey
Attn: Diego Huerta and Dianna Shin, Deputy Attorneys General
Division of Law, Environmental Enforcement & Environmental Justice Section
25 Market Street
P.O. Box 093
Trenton, NJ 08625

Office of the Attorney General of Connecticut
Attn: Jill Lacedonia, Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106

Delaware Department of Justice
Attn: Vanessa L. Kassab, Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

Office of the Attorney General of Maine
Attn: Jeffrey M. Skakalski, Assistant Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333

Office of the New York State Attorney General
Attn: Max Shterngel, Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005

Office of the Attorney General of Nevada
Attn: K. Brunetti Ireland, Chief of Special Litigation
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

Office of the Attorney General of Arizona
Attn: Mary M. Curtin, Senior Litigation Counsel
2005 North Central Avenue
Phoenix, AZ 85004

California Department of Justice
Attn: Rebecca Hunter, Deputy Attorney General
1300 I Street
Sacramento, CA 95814

Colorado Department of Law
Attn: Carrie Noteboom, Assistant Deputy Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

Office of the Attorney General for the District of Columbia
Attn: Lauren Cullum, Special Assistant Attorney General
400 6th Street NW, 10th Floor
Washington, DC 20001

Hawaii Department of the Attorney General
Attn: Wade H. Hargrove III, Deputy Attorney General
Health Division
465 S. King Street, Room 200
Honolulu, HI 96813

Office of the Illinois Attorney General
Attn: Joanna K. Brinkman, Complex Litigation Counsel
115 S. LaSalle Street
Chicago, IL 60603

Office of the Attorney General of Maryland
Attn: Steven J. Goldstein, Assistant Attorney General
200 Saint Paul Place
Baltimore, MD 21202

Office of the Attorney General of Massachusetts
Attn: Seth Schofield, Senior Appellate Counsel
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108

Michigan Department of Attorney General
Attn: Hadley E. Tuthill, Assistant Attorney General
Environment, Natural Resources, and Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909

Office of the Attorney General of Minnesota
Attn: Ryan Pesch and Alyssa Bixby-Lawson, Special Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131

Oregon Department of Justice
Attn: Paul Garrahan, Attorney-in-Charge
Natural Resources Section
1162 Court Street NE
Salem, OR 97301-4096

Office of the Attorney General of Vermont
Attn: Mark Seltzer, Assistant Attorney General
Environmental Protection Unit
109 State Street
Montpelier, VT 05609

Office of the Attorney General of Virginia
Attn: Tillman J. Breckenridge, Solicitor General
202 N. 9th Street
Richmond, VA 23219

Office of the Attorney General of Washington
Attn: Colin O'Brien, Assistant Attorney General
Ecology Division
2425 Bristol Court SW, Second Floor
Olympia, WA 98502

American Petroleum Institute
Attn: Robin Rorick, Vice President, Midstream
200 Massachusetts Avenue NW
Washington, DC 20001

James Hunter Poole
Executive Chairman & Chief Executive Officer
Obelisk Tech Systems Inc.
875 Helicopter Road
Thomasville, GA 31757

American Association for Justice
Attn: Bruce Plaxen, President
777 6th Street NW, Suite 200
Washington, DC 20001

Energy Marketers of America
Attn: Rob Underwood, President
300 New Jersey Avenue NW, Suite 300
Washington, DC 20001

National Association of Manufacturers
Attn: Erica T. Klenicki, Vice President & Deputy General Counsel
733 10th Street NW, Suite 700
Washington, DC 20001

SIGMA: America's Leading Fuel Marketers
1330 Braddock Place, Suite 501
Alexandria, VA 22314

Utility Solid Waste Activities Group (USWAG)
Attn: Daniel Chartier, Executive Director
c/o Associations International, LLC
2365 Harrodsburg Road, Suite A325
Lexington, KY 40504

American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)
815 Black Lives Matter Plaza NW
Washington, DC 20006

United Steelworkers (USW)
60 Boulevard of the Allies
Pittsburgh, PA 15222

American Highway Users Alliance
Attn: Andrew Stasiowski, President & CEO
P.O. Box 66291
Washington, DC 20035

American Trucking Associations
Attn: Brenna Lyles, Vice President, Safety Policy
80 M Street SE, Suite 800
Washington, DC 20003

Transportation Intermediaries Association
Attn: Daniel Hoff, Vice President of Government Affairs
1900 Duke Street, Suite 300
Alexandria, VA 22314

International Liquid Terminals Association
Attn: Leakhena Swett, President
655 15th Street NW, Suite 230
Washington, DC 20005

Alliance for Innovation and Infrastructure
3101 Wilson Boulevard, Suite 500, PMB 801
Arlington, VA 22201

New Jersey Motor Truck Association
Attn: Chris Lutick, Executive Director
160 Tices Lane
East Brunswick, NJ 08816

Fuel Merchants Association of New Jersey
Attn: Eric DeGesero, Executive Vice President
2376 South Avenue, 2nd Floor
Scotch Plains, NJ 07076

# EXHIBIT A

PD-42(R), 91 Fed. Reg. 57,439 (Sept. 9, 2026)

A copy of the petition, as well as any written communications concerning the petition, is available for review online at *www.regulations.gov.*

Interested parties are invited to participate in these proceedings by submitting written views, data, or comments. FRA does not anticipate scheduling a public hearing in connection with these proceedings since the facts do not appear to warrant a hearing. If any interested party desires an opportunity for oral comment and a public hearing, they should notify FRA, in writing, before the end of the comment period and specify the basis for their request.

Communications received by November 9, 2026 will be considered by FRA before final action is taken. Comments received after that date will be considered if practicable.

**Privacy Act**

Anyone can search the electronic form of any written communications and comments received into any of FRA's dockets by the name of the individual submitting the comment (or signing the document, if submitted on behalf of an association, business, labor union, etc.). Under 5 U.S.C. 553(c), DOT solicits comments from the public to inform its processes. DOT posts these comments, without edit, including any personal information the commenter provides, to *www.regulations.gov,* as described in the system of records notice (DOT/ALL–14 FDMS), which can be reviewed at *https://www.transportation.gov/privacy.* See also *https://www.regulations.gov/privacy-notice* for the privacy notice of *regulations.gov.*

Issued in Washington, DC.

**John Karl Alexy,**

*Associate Administrator for Railroad Safety, Chief Safety Officer.*

[FR Doc. 2026–18386 Filed 9–8–26; 8:45 am]

BILLING CODE 4910–06–P

## DEPARTMENT OF TRANSPORTATION

### Federal Railroad Administration

**[Docket Number FRA–2026–2377]**

### Notice of Application for Approval of Discontinuance or Modification of a Railroad Signal System

**AGENCY:** Federal Railroad Administration (FRA), Department of Transportation (DOT).

**ACTION:** Notice.

**SUMMARY:** This document provides the public notice that Norfolk Southern Railway Company (NS) petitioned FRA seeking approval to discontinue or modify a signal system.

**DATES:** FRA must receive comments on the petition by November 9, 2026. FRA will consider comments received after that date to the extent practicable.

**ADDRESSES:**

*Comments:* Comments related to this docket may be submitted by going to *https://www.regulations.gov* and following the online instructions for submitting comments.

*Instructions:* All submissions must include the agency name and docket number. All comments received will be posted without change to *https://www.regulations.gov;* this includes any personal information. Please see the Privacy Act heading in the **SUPPLEMENTARY INFORMATION** section of this document for Privacy Act information related to any submitted comments or materials.

*Docket:* For access to the docket to read background documents or comments received, go to *https://www.regulations.gov* and follow the online instructions for accessing the docket.

**FOR FURTHER INFORMATION CONTACT:** Scott Johnson, Railroad Safety Specialist, FRA Signal, Train Control, and Crossings Division, telephone: 406–210–3608, email: *scott.j.johnson@dot.gov.*

**SUPPLEMENTARY INFORMATION:** Under part 235 of title 49 Code of Federal Regulations (CFR) and 49 U.S.C. 20502(a), this document provides the public notice that by letter dated April 19, 2026, NS petitioned FRA seeking approval to discontinue or modify a signal system. FRA assigned the petition Docket Number FRA–2026–2377.

Specifically, NS requests to discontinue legacy cab signal systems and transition the subject territory to a block system implementation enforced by positive train control (PTC). The change would be implemented on 14 line segments and would eliminate redundancy between PTC and cab signaling.

NS states that the discontinuance will maintain and enhance operational safety in the area by "consolidating movement authority supervision and speed enforcement" into NS's existing PTC system. This is intended to "reduc[e] the potential for conflicting indications between parallel systems" and "eliminat[e] failure modes associated with coded track-circuit cab signal transmission."

A copy of the petition, as well as any written communications concerning the petition, is available for review online at *www.regulations.gov.*

Interested parties are invited to participate in these proceedings by submitting written views, data, or comments. FRA does not anticipate scheduling a public hearing in connection with these proceedings since the facts do not appear to warrant a hearing. If any interested party desires an opportunity for oral comment and a public hearing, they should notify FRA, in writing, before the end of the comment period and specify the basis for their request.

Communications received by November 9, 2026 will be considered by FRA before final action is taken. Comments received after that date will be considered if practicable.

**Privacy Act**

Anyone can search the electronic form of any written communications and comments received into any of FRA's dockets by the name of the individual submitting the comment (or signing the document, if submitted on behalf of an association, business, labor union, etc.). Under 5 U.S.C. 553(c), DOT solicits comments from the public to better inform its processes. DOT posts these comments, without edit, including any personal information the commenter provides, to *www.regulations.gov,* as described in the system of records notice (DOT/ALL–14 FDMS), which can be reviewed at *https://www.transportation.gov/privacy.* See also *https://www.regulations.gov/privacy-notice* for the privacy notice of *regulations.gov.*

Issued in Washington, DC.

**John Karl Alexy,**

*Associate Administrator for Railroad Safety, Chief Safety Officer.*

[FR Doc. 2026–18384 Filed 9–8–26; 8:45 am]

BILLING CODE 4910–06–P

## DEPARTMENT OF TRANSPORTATION

### Pipeline and Hazardous Materials Safety Administration

**[Preemption Determination No. PD–42(R); Docket No. PHMSA–2025–0777]**

### Hazardous Materials: Notice of Administrative Determination of Preemption for Common Law Tort Claims Concerning the Transportation of Gasoline

**AGENCY:** Pipeline and Hazardous Materials Safety Administration (PHMSA), DOT.

**ACTION:** Notice of administrative determination of preemption.

**SUMMARY:** The Exxon Mobil Corporation (Exxon) seeks a determination that

Federal law preempts State common law claims brought against it in New Jersey concerning the safe transportation of gasoline in commerce. PHMSA is issuing a final administrative determination concluding that the State common law tort claims presented by Exxon are preempted. Each of these duties, if imposed, would present an obstacle to compliance with the Federal regulatory framework essential for the safe transportation of gasoline. In addition, any claims about covered subjects, such as the marking, loading and unloading, and classification of gasoline that are not substantively the same as the applicable HMR provisions are preempted.

**FOR FURTHER INFORMATION CONTACT:** Patrick Doyle, Office of Chief Counsel, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue SE, Washington, DC 20590; Telephone No. 202–366–4400.

**SUPPLEMENTARY INFORMATION:**

## I. Application

The Exxon Mobil Corporation (''Exxon'') has applied for an administrative determination as to whether the Federal Hazardous Material Transportation Act (HMTA) preempts certain State common law tort claims against it concerning the marking, employee training, loading and unloading, and hazardous material classification for gasoline transported by cargo tank motor vehicle (CTMV).[1] Exxon's application for a preemption determination originated from common law tort claims brought against it in a New Jersey State court by a former driver whose duties included driving a CTMV and filling it with gasoline at an Exxon facility.[2] The tort claims focus on an assertion that the benzene in gasoline causes an unreasonably high risk of cancer for hazardous materials employees who transport it.[3] The New Jersey State court denied the Defendants' motion for summary judgment on June 24, 2025, in which Exxon claimed the State common law tort claims are preempted by Federal law.[4] In its application, Exxon also notes that lawsuits utilizing similar common law theories have already been brought in other States.[5] Accordingly, PHMSA has accepted this application to provide a definitive assessment of the preemptive scope of the HMTA and its implementing regulations as applied to these common law claims.

## II. Federal Preemption Standards

The HMTA and its amendments reflect Congress's clear intent to create a uniform Federal regulatory scheme that preempts State and local regulations varying from federally mandated hazardous materials transportation standards. Pursuant to 49 U.S.C. 5125(a), a requirement of a State, political subdivision of a State, or Indian tribe is preempted—unless the non-Federal requirement is authorized by another Federal law or DOT grants a waiver of preemption under section 5125(e)—if (1) complying with the non-Federal requirement and the Federal requirement is not possible; or (2) the non-Federal requirement, as applied and enforced, is an obstacle to accomplishing and carrying out the Federal requirement. These two sentences set forth the ''dual compliance'' and ''obstacle'' criteria that PHMSA's predecessor agency, the Research and Special Programs Administration, applied in issuing inconsistency rulings prior to 1990 under the original preemption provision in the HMTA.[6] The dual compliance and obstacle criteria are based on U.S. Supreme Court decisions on preemption.[7]

Subsection (b)(1) of 49 U.S.C. 5125 provides that a non-Federal requirement concerning any of the following subjects is preempted—unless authorized by another Federal law or DOT grants a waiver of preemption—when the non-Federal requirement is not ''substantively the same'' as a provision of Federal hazardous material transportation law, a regulation prescribed under that law, or a hazardous materials security regulation or directive issued by the Department of Homeland Security. To be ''substantively the same,'' the non-Federal requirement must conform ''in every significant respect to the Federal requirement. Only editorial and other similar *de minimis* changes are permitted.'' [8] The five subject areas include: (1) the designation, description, and classification of hazardous material; (2) the packing, repacking, handling, labeling, marking, and placarding of hazardous material; (3) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents; (4) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident; and (5) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing of a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

Congress has long held the view that a single body of uniform Federal regulations promotes safety (including security) in the transportation of hazardous materials. More than thirty years ago, when it was considering the HMTA, the Senate Commerce Committee ''endorse[d] the principle of preemption in order to preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regulations in the area of hazardous materials transportation.'' [9] When Congress expanded the preemption provisions in 1990, it specifically found that ''many States and localities have enacted laws and regulations that vary from Federal laws and regulations pertaining to the transportation of hazardous materials, thereby creating the potential for unreasonable hazards in other jurisdictions and confounding shippers and carriers that attempt to comply with multiple and conflicting registration, permitting, routing, notification, and other regulatory requirements.'' [10] And ''because of the potential risks to life, property, and the environment posed by unintentional releases of hazardous materials, consistency in laws and regulations governing the transportation of hazardous materials is necessary and

[1] The HMTA is codified at 49 U.S.C. 5101 *et seq.*

[2] PHMSA has filed Exxon's application (''the Application'') in the **Federal Register** docket applicable to this notice.

[3] Application at 2–3.

[4] The New Jersey State court opinion is included as Exhibit 1 to the Application, which is located the **Federal Register** docket. The case is captioned *Singh, et. al* v. *Exxon Mobil Corp., et. al,* and is filed in the Superior Court of New Jersey in Middlesex County with Docket No. MID–L–004215–22.

[5] Application at 9–10.

[6] Public Law 93–633 § 112(a), 88 Stat. 2161 (1975).

[7] *Hines* v. *Davidowitz,* 312 U.S. 52 (1941); *Florida Lime & Avocado Grower* v. *Paul,* 373 U.S. 132 (1963); *Ray* v. *Atlantic Richfield,* 435 U.S. 151 (1978).

[8] 49 CFR 107.202(d). Additional standards apply to preemption of non-Federal requirements on highway routes over which hazardous materials may or may not be transported and fees related to transporting hazardous material. *See* 49 U.S.C. 5125(c) and (f). *See also* 49 CFR 171.1(f), which explains that a ''facility at which functions regulated under the HMR are performed may be subject to applicable laws and regulations of state and local governments and Indian tribes.''

[9] S. Rep. No. 1102, 93rd Cong. 2nd Sess. 37 (1974).

[10] Public Law 101–615, 2, 104 Stat. 3244, 3245 (1990).

desirable.''[11] Therefore, to ''achieve greater uniformity and to promote the public health, welfare, and safety at all levels,'' Congress found that ''Federal standards for regulating the transportation of hazardous materials in intrastate, interstate, and foreign commerce are necessary and desirable.''[12] A United States Court of Appeals has found that uniformity is the ''linchpin'' in the design of the Federal laws governing the transportation of hazardous materials.[13]

Under 49 U.S.C. 5125(d)(1), any person (including a State, political subdivision of a State, or Indian tribe) directly affected by a requirement of a State, political subdivision or tribe may apply to the Secretary of Transportation for a determination as to whether the requirement is preempted. The Secretary of Transportation has delegated authority to PHMSA to make determinations of preemption, except for those concerning highway routing (which have been delegated to the Federal Motor Carrier Safety Administration).[14]

## III. Summary of Public Comments

PHMSA published a public notice and invitation to comment in the **Federal Register** on January 9, 2026 (Docket No. PHMSA–2025–0777).[15] PHMSA subsequently published a notice on February 10, 2026, extending the initial comment period to March 10, 2026, and the rebuttal comment period to March 23, 2026.[16] Interested parties were directed to review the application and submit comments via the *regulations.gov* website.

The docket received a total of 32 comments, revealing significantly divided sentiment among stakeholders. The commenters largely coalesced into those in favor of preempting the State common law tort claims, and those opposed. The bullets below summarize the distribution of major commenters:

- In favor of preemption are industry associations such as the American Petroleum Institute, National Association of Manufacturers, U.S. Chamber of Commerce, Western States Petroleum Association, and Energy Marketers of America, alongside the State Attorneys General of Montana, Alaska, Alabama, Arkansas, Florida, Georgia, Iowa, Indiana, Kentucky, Louisiana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Utah, and West Virginia.
- Opposed to preemption are advocacy groups including the American Association for Justice (formerly known as the Association of Trial Lawyers of America) and Earthjustice on behalf of the Truckers' Movement for Justice, as well as the State Attorneys General of Rhode Island, New Jersey, Connecticut, Delaware, Maine, New York, and Nevada.

### *A. Commenters Supporting Preemption*

An alliance of State Attorneys General led by the State of Montana, alongside several industry associations, submitted extensive comments strongly supporting a finding of preemption. These industry and State supporters argued that allowing individual State juries to dictate hazardous materials transportation rules through localized tort claims creates redundant oversight and severely disrupts the safety of the national supply chain. Supporters argued that without strict preemption, energy suppliers would be forced to navigate a fragmented landscape of State requirements governing gasoline markings, employee training, and loading operations. They argued this fragmentation would destroy the safe operational interchangeability of CTMV fleets and effectively cripple the safe interstate transportation of a critical commodity, precisely the scenario Congress intended the HMTA to prevent.[17]

### *B. Commenters Opposing Preemption*

Conversely, an opposing alliance of State Attorneys General, led by States such as New York and New Jersey, along with environmental and labor advocacy groups, argued against preemption. Their primary contention was that States hold sovereign interests in preserving their historic police powers, and that State common law duties are a necessary mechanism to protect worker safety. The State Attorneys General argued these historic police powers are not preempted by the HMTA because in fields that States have traditionally occupied, which they claim includes worker safety, Courts should start with an assumption that these historic powers cannot be preempted absent the ''clear and manifest'' purpose of Congress.[18] Opponents also raised procedural and constitutional arguments, suggesting that a finding of preemption by PHMSA creates a ''separation of powers'' issue by improperly sitting in judgment of the New Jersey State court, and invoked the *Loper Bright* doctrine to suggest agency overreach. Furthermore, the several State Attorneys General attempted to frame the issue broadly as ''toxic tort'' litigation, to include references that presumably attempt to compare the gasoline refining and transportation industries to the tobacco, opioid, and asbestos industries.[19] As part of the ''toxic tort'' argument, the State Attorneys General argue cases such as the one at hand are necessary to ''reveal internal scientific information held by corporations'' and to put ''corporate actors on notice of emerging threats posed by their products and workplaces.''[20]

## IV. Analysis of Ruling Using the Application of Federal Preemption Standards

The State common law tort claims advanced against Exxon seek to impose a slate of new regulatory safety duties governing the marking of CTMVs and shipping papers, the training of hazmat personnel, the design of loading and unloading equipment, and the hazard classification of gasoline. Preemption doctrine under the Supremacy Clause requires Federal law to supersede conflicting State laws, particularly when Congress uses express preemption to manifest clearly its intent to preempt and regulate comprehensively in a field like hazardous materials transportation.

### *1. Application of Judicial Precedent*

A. State Common Law Duties Are ''Requirements'' That Can Be Preempted

The United States Supreme Court has held that statutory preemption provisions apply equally to State

---

[11] *Id.* (Congress' findings also stated that ''the movement of hazardous materials in commerce is necessary and desirable to maintain economic vitality and meet consumer demands, and shall be conducted in a safe and efficient manner.'').

[12] Public Law 101–615 § 2, 104 Stat. 3244. (In 1994, Congress revised, codified, and enacted the HMTA ''without substantive change,'' at 49 U.S.C. Chapter 51. Pub. L. 103–272, 108 Stat. 745 (July 5, 1994)).

[13] *Colorado Pub. Util. Comm'n* v. *Harmon,* 951 F.2d 1571, 1575 (10th Cir. 1991).

[14] 49 CFR 1.97(b).

[15] 91 FR 1032 (Jan. 9, 2026).

[16] 91 FR 5988 (Feb. 10, 2026).

[17] *See, e.g.,* American Fuel & Petrochemical Manufacturers and the Western States Petroleum Association, Comment, Docket ID PHMSA–2025–0777–0027 at 3 (Mar. 24, 2026) (''We have a strong interest in ensuring that PHMSA maintains clear federal uniform regulations governing hazardous material transportation and prevents the emergence of a patchwork of inconsistent, liability-driven standards. Such inconsistency undermines regulatory predictability, disrupts interstate commerce, and impairs the nationwide uniformity Congress intended when delegating preemption authority to PHMSA.'').

[18] Attorneys General of New York, *et al.,* Comment, Docket ID PHMSA–2025–0777–0025 at 2 (Mar. 23, 2026). The State Attorneys general rely on *Wyeth* v. *Levine,* 555 U.S. 555, 565 (quoting *Medtronic, Inc.* v. *Lohr,* 518 U.S. 470, 485 (1996) and *Rice* v. *Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).

[19] Docket ID PHMSA–2025–0777–0025 at 4 (Mar. 23, 2026).

[20] *Id.*

common law duties as they do to legislative State statutes, allowing State tort claims to be considered as ''requirements'' under the preemption analysis.[21] The threat of substantial tort liability effectively regulates entity behavior much like a direct State mandate, and consequently, courts must often rigorously evaluate these common law claims against preemption doctrines to preserve the primacy of Federal regulatory safety frameworks.

B. Product Marking and Labeling Provisions

The Supreme Court very recently dealt with preemption principles in *Monsanto Company* v. *John L. Durnell,* decided on June 25, 2026.[22] In addition to making it clear that State common laws are requirements that can be preempted by Federal law, the *Monsanto* ruling is also highly informative to the issues presented here because it considered whether a State can add markings to a product label different from or in addition to the safety-focused marking and labeling required by Federal law.[23] In *Monsanto,* the Court addressed whether the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) preempted a State common law failure-to-warn claim brought by a plaintiff alleging that exposure to a glyphosate-based herbicide caused his non-Hodgkin's lymphoma.[24] The plaintiff asserted that the manufacturer should have included a cancer warning on the product's label.[25] The Supreme Court firmly rejected the plaintiff's argument, holding that FIFRA expressly preempts State-law failure-to-warn claims because such claims would compel the manufacturer to add cancer warnings to its labels, thereby imposing a requirement ''in addition to or different from'' those mandated by the Environmental Protection Agency (EPA).[26] The *Monsanto* ruling offers Courts a blueprint for evaluating preemption claims when State-imposed hazard communication rules conflict with established Federal regulatory systems. FIFRA, which was at issue in *Monsanto,* and the Federal Food, Drug, and Cosmetic Act both use the ''in addition to or different from'' language in clauses related to uniformity.[27] PHMSA believes that the ''substantively the same'' test for covered subjects in the HMTA is analogous to that language because Congress was trying to achieve the same result—uniform nationwide regulations on a particular topic.[28]

In *Monsanto,* the Supreme Court emphasized that aside from tort claims, the public already has a direct administrative avenue to address pesticide safety concerns, which is not unlike the process in which PHMSA considers petitions for rulemaking from the public regarding hazardous material marking, labeling, and classification.[29] The Court noted that, if third parties wish to bring new information to the EPA's attention, or if they believe the agency has overlooked relevant data, they are ''free to petition EPA to modify, suspend, or cancel a pesticide's registration.'' [30] This right to petition explicitly includes asking the EPA to require a labeling change if new safety concerns arise.[31] Furthermore, if the EPA refuses to act on such a petition, citizens are not left without recourse; they may seek judicial review of the agency's decision.[32] The Court contrasted this forward-looking administrative process with State tort claims, reasoning that petitioning the EPA is fundamentally different from ''seeking to retroactively penalize a manufacturer for doing what it was legally required to do at the time.'' [33]

C. Judicial Interpretation of the Scope of HMTA Preemption

Federal appellate courts have had numerous occasions to consider how broadly the scope of HMTA preemption should be interpreted. In *Buono* v. *Tyco Fire Products,* the United States Court of Appeals for the Second Circuit evaluated tort claims involving the transportation of hazardous materials.[34] The court broadly interpreted the statutory language, emphasizing that ''[t]he HMTA expressly preempts nonfederal laws 'about' certain subjects related to the transportation of hazardous materials in commerce.'' [35] The Second Circuit decisively concluded that the plaintiff's common-law claims were preempted because they ''would impose duties beyond the HMTA and associated regulations,'' meaning they could not possibly be deemed ''substantively the same.'' [36]

Likewise, the United States Court of Appeals for the Third Circuit delivered an expansive reading of HMTA preemption in *Roth* v. *Norfalco.*[37] Addressing common law claims regarding the design of rail tank cars, the Third Circuit stressed the breadth of the preemption provision: ''It is obvious from the face of the statute that § 5125(b)(1) expressly preempts non-federal requirements that relate to, or are 'about,'' the five subject areas set forth in § 5125(b)(1)(A)–(E).'' [38] The Third Circuit further elaborated that section 5125(b)(1) is a remarkably broad provision that ''preempts all non-federal laws, regulations, orders, or requirements that are 'not substantively the same as' corresponding federal regulations,'' leaving ''little, if any, room for non-federal regulation.'' [39] The Third Circuit aptly noted that, unlike other Federal statutes, there is nothing in the HMTA to indicate that Congress wished to carve out State tort claims, confirming a robust preemption provision that commands national uniformity.[40]

*2. Application of Agency Precedent*

PHMSA has consistently interpreted and applied the preemption provisions of the HMTA through a robust body of past administrative determinations and rulemaking actions. These precedents establish an enduring agency policy that the HMR must serve as the definitive, exclusive standard for hazardous

[21] *Cipollone* v. *Liggett Grp., Inc.,* 505 U.S. 504, 521 (1992) (''The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.''); *Riegel* v. *Medtronic, Inc.,* 552 U.S. 312, 324 (2008) (''Absent other indication, reference to a State's 'requirements' includes its common-law duties.'').

[22] *Monsanto Co.* v. *Durnell,* 146 S. Ct. 2001 (2026). The Court stated that ''Failure-to-warn claims, like Durnell's claim here, 'are premised on common-law rules that qualify' as labeling requirements because those 'rules set a standard for a product's labeling.''' *Id.* at 9 (citing *Bates* v. *Dow Agrosciences LLC,* 544 U.S. 431, 446 (2005)).

[23] The *Monsanto* court relied heavily on its prior precedent in *Riegel* v. *Medtronic, Inc.,* 552 U.S. 312 (2008). In *Riegel,* the Court analyzed the express preemption clause of the Medical Device Amendments (MDA), which utilizes language similar to both FIFRA and the HMTA. The Court concluded that the Food and Drug Administration's (FDA) premarket approval of medical devices imposed Federal ''requirements,'' and thus, the FDA's approval preempted State common law claims for negligence and strict liability that were premised on additional or contrary safety requirements.

[24] *Id.* at 1–2.

[25] *Id.*

[26] *Id.*

[27] 7 U.S.C. 136v(b); 21 U.S.C. 360k(a)(1). The Federal Food, Drug, and Cosmetic Act's language is substantively identical to that of FIFRA, but uses the terms in a different order. *See id.* (''different from, or in addition to'').

[28] 49 U.S.C. 5125(b)(1).

[29] *See Id.* at 21; 49 CFR 106.95.

[30] *Monsanto* at 21 (citing 40 CFR 154.10).

[31] *Id.* at 21 n.10.

[32] *Id.* at 21 (citing 7 U.S.C. 136n(a), 136d(h)). Similar to EPA, petitioners may appeal a PHMSA decision to deny a petition for rulemaking pursuant to 49 CFR 106.110(b) and 106.115(b) within 30 days of receiving PHMSA's notice of denial.

[33] *Id.* at 21 n.10.

[34] 78 F.4th 490 (2d Cir. 2023).

[35] *Id.* at 493.

[36] *Id.*

[37] 651 F.3d 367 (3d Cir. 2011).

[38] *Id.* at 375.

[39] *Id.* at 375, 379.

[40] *Id.* at 378–9.

materials transportation safety in commerce. This precedent guides the agency's evaluation of the present matter.

In Preemption Determination 34 (PD–34(R)), stemming from a petition from Amtrol, Inc., PHMSA evaluated State common law tort claims alleging that DOT Specification 39 compressed gas cylinders were defectively designed due to a propensity for rusting, and that the manufacturer failed to mark the cylinders with warnings regarding this potential hazard.[41] PHMSA issued a determination concluding that the HMTA preempts private causes of action seeking to establish State common law requirements applicable to the design, manufacture, or marking of a packaging represented as qualified for use in transporting hazardous materials.[42] PHMSA found that such common law duties were expressly preempted because they concerned covered subjects and would create requirements which are not substantively the same as the stringent requirements in the HMR.[43]

In Preemption Determination 40 (PD–40(R)), regarding the State of Washington's Crude Oil by Rail Volatility Requirements, PHMSA reviewed a State legislative statute that prohibited facilities from loading or unloading crude oil into or from rail tank cars unless the oil exhibited a vapor pressure of less than nine pounds per square inch (psi).[44] PHMSA determined that the Washington State law was preempted under multiple, independent theories. First, the vapor pressure requirement constituted a scheme for classifying a hazardous material that was not substantively the same as the HMR.[45] Second, the restriction on loading and unloading constituted a handling requirement that was not substantively the same as the HMR.[46] Finally, PHMSA determined that the vapor pressure requirement acted as a profound obstacle to accomplishing and carrying out the HMTA because it disrupted the unified Federal scheme and effectively forced rerouting or modal shifts that undermined overall transportation safety.[47]

In Preemption Determination 19 (PD–19(R)), PHMSA determined the HMTA preempted specific marking and recordkeeping requirements promulgated by the New York State Department of Environmental Conservation (NYSDEC) for gasoline transport vehicles.[48] Specifically, PHMSA preempted State regulations requiring transport vehicles to display a distinct ''NYS DEC'' marking to indicate successful vapor-tightness testing, maintain a copy of the most recent pressure-vacuum test results directly on the vehicle, and retain pressure-vacuum test and repair records for a designated period.[49] PHMSA reasoned that these State-level mandates were preempted because they failed the statutory ''substantively the same'' test for covered subjects; because ultimately, the NYSDEC provisions imposed distinct duties that were not substantively the same as the HMR.[50]

The structural boundaries of PHMSA's exclusive authority were most comprehensively mapped in the HM–223 Rulemaking (*Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage*). Through the Final Rule[51] and the subsequent Response to Appeals,[52] PHMSA codified the precise scope of ''pre-transportation'' and ''transportation'' functions subject to Federal preemption. In this rulemaking, PHMSA underscored its exclusive institutional competence, explicitly noting that ''the Secretary of Transportation, through the DOT operating administrations, has developed a special expertise that makes the Department uniquely qualified to play the primary Federal regulatory role in the protection of workers who operate motor vehicles, trains, aircraft, and vessels used to transport hazardous materials.''[53]

In the HM–223 Final Rule, PHMSA clarified that ''[t] he HMR are not minimum requirements that other jurisdictions may exceed if local conditions warrant; rather, the HMR are national standards and must be uniformly applied across jurisdictional lines.''[54] Therefore, the preemption provisions clearly and effectively preclude State, local, and Tribal governments from regulating pre-transportation and transportation functions in a manner that differs from the Federal requirements, to include by failing the ''substantively the same'' test or by acting as an obstacle to HMR compliance.

Crucially, HM–223 made clear that ''all loading, unloading, and storage functions performed by a carrier in the course of transporting a hazardous material in commerce would be subject to the HMR.''[55] PHMSA also established that the loading and unloading of bulk packagings—such as CTMVs transferring gasoline—are inherently regulated Federal transportation functions. The rule defined ''loading incidental to movement'' for a bulk packaging as ''the filling of the packaging with a hazardous material by carrier personnel or in the presence of carrier personnel for the purpose of transporting it.''[56] Although PHMSA acknowledged that the Occupational Safety and Health Administration (OSHA) shares concurrent jurisdiction regarding general facility worker-safety aspects, PHMSA maintains its authority over the safety of the transportation function itself.[57] The two agencies both regulate the safe loading and unloading of hazardous materials, but with different areas of focus, *e.g.,* workplace safety versus transportation safety. PHMSA is focused on the risks inherent to the transportation of hazardous materials in commerce.[58] PHMSA regulates how those risks are classified, contained, and communicated (*e.g.,* how a material is determined to be hazardous, how its packaging must be filled and closed, and what markings, labels, and accompanying hazard communication are required).[59] As articulated in the rulemaking, a primary goal was eliminating uncertainty for the regulated public to facilitate compliance and enhance hazardous materials safety across the Nation.[60]

*3. Topic-by-Topic Analysis*

A detailed, topic-by-topic analysis establishes that these claims each act as obstacles to the execution of Federal safety law, and, with the exception of the training claims, also constitute direct regulation of covered subjects that fail the ''substantively the same'' test.[61] The application of Supreme Court and agency precedent, along with demonstrated congressional intent,

[41] 77 FR 39567 (Jul. 3, 2012).
[42] 77 FR at 39570.
[43] *Id.*
[44] 85 FR 29511 (May 15, 2020).
[45] 85 FR at 29528.
[46] *Id.*
[47] 85 FR at 29527, 29528.
[48] 74 FR 4291 (Jan. 23, 2009).
[49] *Id.* at 4296.
[50] *Id.*
[51] 68 FR 61906 (Oct. 30, 2003).
[52] 70 FR 20018 (Apr. 15, 2005).
[53] 68 FR at 61927.
[54] *Id.* at 61923.
[55] *Id.* at 61914.
[56] *Id.* at 61910.
[57] *Id.* at 61926–28.
[58] 49 U.S.C. 5101.
[59] 49 CFR 171.1.
[60] *Id.* at 61935.
[61] Employee training claims are evaluated and preempted under the Obstacle Test, as training is not *per se* one of the five enumerated covered subjects, though it is pervasively regulated under the HMR.

make clear that each of the claims at issue are preempted.[62]

*A. Container Marking and Shipping Papers*

The State tort claims seek to impose a localized State-level legal duty upon Exxon to mark gasoline containers, CTMVs, and associated shipping papers with warnings regarding the product's benzene content and associated cancer risks.

This proposed common law duty is expressly preempted. The HMR already provides an exhaustive, globally harmonized, and highly standardized hazard communication system codified in 49 CFR part 172. This system dictates precisely what warnings, placards, labels, and shipping descriptions must accompany a shipment of a Class 3 flammable liquid like gasoline. A State common law duty mandating the addition of a benzene-specific cancer warning creates a supplementary marking requirement that is not ''substantively the same'' as the HMR. Therefore, it is preempted under the ''substantively the same'' test for covered subjects (49 U.S.C. 5125(b)(1)(B) and (C)), which expressly preempts non-Federal requirements concerning the marking of hazardous material and the preparation and content of shipping documents.

Furthermore, this requirement independently fails the obstacle test. The primary purpose of a uniform national hazard communication standard is to provide immediate, universally recognized indicators to first responders in the event of an emergency. Imposing varied, State-by-State warning requirements dilutes the safety efficacy of these immediate hazard indicators, creating confusion at the scene of an incident. If responders are forced to parse through supplementary State-mandated cancer warnings while attempting to mitigate a flammable liquid spill, the delay directly poses an obstacle to complying with the Federal standardized scheme, thereby jeopardizing safety.

Regarding hazard communication, Earthjustice, representing the Truckers Movement for Justice, argues that the claims made by Mr. Singh in New Jersey State court are outside the regulatory scope of the HMTA and HMR. The State Attorneys General, led by New York and other commenters, make similar arguments.[63] PHMSA disagrees.[64] To the extent Mr. Singh's claims involve hazard communications regulated by PHMSA, such as container marking and the requirements for shipping papers, these are clearly covered subjects and State common law cannot impose requirements that are not substantially the same. In making this assertion, Earthjustice appears to conflate the requirements for safety data sheets and shipping papers, only the latter of which are part of PHMSA's system of hazard communications. Furthermore, any attempt to add additional warnings to PHMSA's standardized hazard communications would present obstacles to the Federal system and are therefore still independently preempted.

B. Hazardous Materials Employee Training

The tort claimants allege that Exxon breached a State common law duty by failing to train and specifically warn a hazmat employee about the long-term cancer dangers resulting from benzene exposure during transportation operations.

This proposed duty is preempted because it creates an obstacle to compliance with 49 CFR part 172, subpart H, which establishes standardized Federal training requirements designed to ensure the safety and competency of all hazmat employees nationwide.[65] Specific State-imposed duties may frustrate compliance with the requirements in the HMR. For instance, the HMR is written in a manner that centers on requirements for a ''hazmat employer'' to train its ''hazmat employees.'' [66] The facts presented in the Exxon petition at issue would require a hazmat employer to provide training to a driver who works for a third party and is therefore not one of its hazmat employees. GPA Midstream points out in its comment that such a duty would present an obstacle to compliance with the HMR because it would frustrate and effectively undermine these well-established definitions and training requirements.[67] GPA Midstream argues this duty would lead to a complicated patchwork of training requirements for offerors and carriers to navigate, particularly when those entities transport across State lines.[68]

In addition, these training requirements already contain a requirement that employees receive training concerning ''. . . measures to protect the employee from the hazards associated with hazardous materials to which they may be exposed in the work place, including specific measures the hazmat employer has implemented to protect employees from exposure. . . .'' [69] Subjecting national carriers to overlapping, State-by-State regulatory regimes that conflict with the these requirements would burden the unified Federal safety culture intended by Congress and poses a direct obstacle to implementing the HMR efficiently and safely across the gasoline supply chain.[70]

Several commenters oppose PHMSA finding that State common law claims regarding hazardous materials employee training are preempted.[71] Obelisk Tech Systems accurately points out that the HMR only prescribes ''minimum training requirements'' and that for motor vehicle drivers ''a State may impose more stringent training requirements.'' Nonetheless, the same provision makes clear the States may only do so if those requirements ''do not conflict with the training requirements in this subpart and in part 177 of this subchapter [Carriage by Public Highway]'' and ''apply only to drivers domiciled in that State.'' [72] Also, PHMSA notes that, while hazardous material employee training is not one of the covered subjects in 49 U.S.C. 5125, State common law duties regarding training would still be preempted to the extent such requirements present obstacles to compliance with the Federal requirements in subpart H. PHMSA agrees that gasoline transportation by CTMV often requires frequent crossing of State lines, meaning that a State could jeopardize the Federal system of safe transportation by creating a patchwork of training requirements that can vary from driver to driver, and

[62] When applying *Monsanto* and *Riegel,* just as the EPA and FDA determine the adequacy of hazard warnings and device safety, PHMSA exclusively determines the adequacy of hazard communication, classification, and handling protocols for hazardous materials. *See also Cipollone,* 505 at 521 (recognizing that State common law damages actions can impose ''requirements or prohibitions'' that are preempted by Federal statute).

[63] *See. e.g.,* American Association for Justice (formerly the Association of Trial Lawyers of America), Comment, Docket ID PHMSA–2025–0777–0014 at 8 (Feb. 10, 2026).

[64] Earthjustice, Comment, Docket ID PHMSA–2025–0777–0013 (Feb. 9, 2026).

[65] *See* Preemption Determination No. PD–7(R), 60 FR 10419 (Feb. 24, 1995) (PHMSA's predecessor agency found that certain certification requirements that Maryland attempted to impose on drivers loading or unloading oil were preempted as training requirements).

[66] 49 CFR 171.8; 49 CFR 172.702(a) (''A hazmat employer shall ensure that each of its hazmat employees is trained in accordance with the requirements prescribed in this subpart.'').

[67] GPA Midstream, Comment, Docket ID PHMSA–2025–0777–0034 at 7 (Apr. 21, 2026).

[68] *Id.*

[69] 49 CFR 172.704(a)(3)(ii).

[70] *See also*

[71] *See, e.g.,* Obelisk Tech Systems, Inc., Comment, Docket ID PHMSA–2025–0777–0020 (Mar. 10, 2026).

[72] 49 CFR 172.701.

between various offerors and carriers.[73] Therefore, PHMSA finds that a State common law imposed training requirement that is an obstacle to, or otherwise conflicts with, the Federal requirements in the HMR must be preempted.

C. Loading and Unloading Equipment Design

The State tort claims are premised on a design defect theory, alleging that the loading arms utilized at Exxon bulk facilities to transfer gasoline into CTMVs are defectively designed because they fail to capture trace benzene vapors effectively during the transfer process.

This claim is expressly preempted under both the ''substantively the same'' test for covered subjects and the obstacle test. As defined comprehensively in the HM–223 rulemaking, the loading and unloading of bulk packagings by or in the presence of carrier personnel are regulated transportation functions (''loading incidental to movement''). The HMR already contains highly detailed specifications governing the design, construction, qualification, and operational tolerances of cargo tanks and their associated appurtenances, piping, and valving.[74]

Several commenters oppose preemption because they argue certain tasks or locations are outside the scope of the HMTA. For example, Earthjustice argues that certain locations are ''outside the Act's reach—including the gates where Mr. Singh entered the terminal, the office where Mr. Singh picked up shipping papers, the permanent storage tanks where Exxon stored its petroleum fuels, and the loading rack where Mr. Singh picked up those fuels.'' [75] This is incorrect. The reach of the HMTA, and in turn the HMR, extends to fourteen listed pre-transportation functions, regardless of whether an item at issue, such as a loading arm, is actually moveable. A State court judgment finding a federally compliant loading or unloading connection ''defective'' under State common law imposes a new localized safety requirement. This constitutes a requirement concerning the designing, manufacturing, and fabricating of a packaging component (49 U.S.C. 5125(b)(1)(E)) that is not substantively the same as the HMR provisions for covered subjects and would therefore be preempted. Moreover, forcing operators to retrofit loading equipment to satisfy disparate State jury verdicts presents a substantial obstacle to the safe, uniform transportation of gasoline in interstate commerce.

D. Hazardous Material Classification

Finally, Exxon states the tort claimants' demands would require that gasoline producers redesign their product—specifically removing all trace benzene—to render the product ''safe'' under State tort standards.

The Federal hazard classification system lies at the very heart of the HMR and any attempts to undermine it are expressly preempted.[76] Under the HMR, and in alignment with international standards, gasoline is classified as a Class 3 flammable liquid. In the event any State common law duty would require Exxon to change the classification of gasoline in a way that is different from the classification required by the HMR, such a mandate would frustrate Federal authority. This State common law duty could result in an improper re-classification scheme that is not substantively the same as current HMR classification requirements, which would directly violate 49 U.S.C. 5125(b)(1)(A). Furthermore, allowing State judiciaries to require deviation from the HMR's classification scheme would fail the obstacle test entirely.

Exxon asserts that a State common law duty demanding physical product redesign is effectively a backdoor attempt to force a manufacturer to treat a standard Class 3 flammable liquid as a Class 6.1 poisonous material. As noted earlier in the discussion of the *Monsanto* case, any member of the public, to include the tort claimants at issue here, are able to petition PHMSA to make changes to the HMR.[77] The claimants could bring such a petition to seek the reclassification of gasoline, or to make any other of the changes they seek to obtain via tort litigation. PHMSA receives petitions on a routine basis and already has a proven process to consider such petitions in a manner that ensures the HMR responds to public concerns while maintaining the highest levels of hazardous materials transportation safety.[78]

Several comments, such as those provided by the several State Attorneys General led by New York, cite to the benzene content in gasoline and attempt to reframe this proceeding as generalized ''toxic tort'' litigation. Similarly, the commenters in opposition to preemption claim there is a general presumption against preemption regarding historic State police powers.[79] The Supreme Court has unequivocally settled this issue: ''when a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'' [80] The HMTA contains a robust, express preemption clause, neutralizing any generalized presumption in favor of State sovereignty in this highly regulated arena.[81] In addition, the State Attorneys General led by New York cite to certain historic police powers that are actually fields that have been long occupied by the Federal government. The Federal government has long been charged with maintaining systems to move hazardous materials in commerce safely.[82] The State Attorneys General led by New York also argue these historic police powers include the power to prevent air and water pollution, which have also been long

[73] *See. e.g.,* Energy Marketers of America, Comment, Docket ID PHMSA–2025–0777–0009 at 3 (''EMA members operate in an industry where fuel shipments routinely cross multiple state lines, often traveling through numerous jurisdictions in a single delivery route. Uniform HMR standards for marking, *training,* loading, and classification are critical to ensuring safety, regulatory compliance, and operational efficiency (*emphasis added*).''

[74] 49 CFR 178.320.

[75] *See, e.g.,* Earthjustice, Comment, Docket ID PHMSA–2025–0777–0013 at 6 (Feb. 9, 2026); *see also* Locks Law Firm, Comment, Docket ID PHMSA–2025–0777–0015 at 10 (Feb. 9, 2026).

[76] Contrary to several commenters' assertions, there is no ''separation of powers'' issue present in this proceeding. *See, e.g.,* Attorneys General of New York, *et al.,* Comment, Docket ID PHMSA–2025–0777–0025 (Mar. 23, 2026). PHMSA does not purport to act as an appellate court sitting in judgment of a State court's interlocutory decision. However, PHMSA is statutorily authorized under 49 U.S.C. 5125(d)(1) to issue expert determinations on the preemptive scope of the HMTA and its own regulations, providing necessary guidance and the agency's interpretation of congressional intent. Similarly, invocations of the *Loper Bright* doctrine are misplaced and outside the scope of this administrative determination, as this proceeding involves the straightforward application of an express statutory preemption clause, not deference to agency interpretation of ambiguous statutory text.

[77] 49 CFR 106.95.

[78] *See, e.g.,* 85 FR 75680 (Nov. 25, 2020) (Rulemaking in which PHMSA responded to 24 petitions for rulemaking submitted by the regulated community between February 2015 and March 2018).

[79] Attorneys General of New York, *et al.,* at 2–3.

[80] *Chamber of Com. of U.S.* v. *Whiting,* 563 U.S. 582, 594 (2011) (quoting *CSX Transp., Inc.* v. *Easterwood,* 507 U.S. 658, 664, (1993)); see also *Puerto Rico* v. *Franklin Cal. Tax-Free Tr.,* 579 U.S. 115, 125 (2016) (stating that the Court does not invoke any presumption against pre-emption when a statute contains an express-preemption clause).

[81] In addition, GPA Midstream notes that neither New Jersey nor any of the opposing States have requested an HMTA waiver in this matter, and therefore argues that PHMSA should reject any federalism concerns until a State attempts to use this mechanism. GPA Midstream, Comment, Docket ID PHMSA–2025–0777–0034) at 3 (Apr. 22, 2026).

[82] *Cf.* Transportation of Explosives Act, Public Law 60–174, 35 Stat. 554 (1908) (establishing a comprehensive Federal framework for regulating the transportation of explosives in interstate and foreign commerce).

occupied by the Federal government and its regulators.[83]

## V. Ruling

For the reasons set forth herein, PHMSA determines that the HMTA and HMR wholly preempt State common law tort claims that are about the marking, employee training, loading and unloading, and hazardous material classification for gasoline transported in commerce by cargo tank motor vehicle.

PHMSA reaffirms that 49 U.S.C. 5125(a) and (b) contain independent bases for preemption. The State common law duties at issue would each impose an obstacle to the comprehensive Federal regulatory scheme and threaten the safety of the entire national gasoline transportation chain, and separately, certain claims are also preempted because they present ''non Federal requirements'' that are not ''substantively the same'' as the Federal requirements.

Consequently, the HMR provides the exclusive regulatory framework for the subjects addressed in this determination, barring the imposition of frustrating, contradictory, or duplicative State-specific common law duties.

## VI. Petitions for Reconsideration/ Judicial Review

In accordance with 49 CFR 107.211, any person aggrieved by this administrative determination may formally file a petition for reconsideration. The petition for reconsideration must be filed within 20 days of the publication of this determination in the **Federal Register**.

Any person who is adversely affected or aggrieved by this administrative determination may seek judicial review under 49 U.S.C. 5127(a) in an appropriate United States Court of Appeals within 60 days after publication of this determination in the **Federal Register**. The filing of a petition for reconsideration is not a prerequisite to seeking judicial review of this decision under 49 U.S.C. 5127(a).

Issued in Washington, DC, on September 4, 2026.

**Keith J. Coyle,**

*Chief Counsel.*

[FR Doc. 2026–18382 Filed 9–8–26; 8:45 am]

**BILLING CODE 4910–60–P**

[83] *See, e.g.,* Rivers and Harbors Appropriation Act of 1899, ch. 425, § 13, 30 Stat. 1121, 1152 (1899) (Commonly referred to as the ''Refuse Act,'' Section 13 is one of the oldest environmental statutes in American law and prohibits the discharge of any refuse matter into navigable waters of the United States or their tributaries).

# DEPARTMENT OF TRANSPORTATION

## Pipeline and Hazardous Materials Safety Administration

**[Docket No. PHMSA–2024–0164]**

## Gexcon U.S., Inc.'s Petition for EFFECTS Version 12.2.0 as an Alternative Model for Calculating the Vapor-Gas Dispersion Exclusion Zone

**AGENCY:** Pipeline and Hazardous Materials Safety Administration (PHMSA), Department of Transportation (DOT).

**ACTION:** Notice.

**SUMMARY:** PHMSA is publishing this notice and a draft letter of decision to solicit public comment on a petition for approval that would authorize the use of an alternate flammable vapor-gas dispersion model in connection with the siting of liquefied natural gas (LNG) facilities.

**DATES:** Submit any comments regarding the petition by October 9, 2026.

**ADDRESSES:** Comments should reference the docket number for the petition request and may be submitted in one of the following ways:

• *E-Gov Web: www.regulations.gov.* This site allows the public to enter comments on any **Federal Register** Notice issued by any agency. Follow the online instructions for submitting comments.

• *Mail:* Docket Management System: U.S. Department of Transportation, 1200 New Jersey Avenue SE, West Building Ground Floor, Room W12–140, Washington, DC 20590–0001.

• *Hand Delivery:* DOT Docket Management System: West Building Ground Floor, Room W12–140, 1200 New Jersey Avenue SE, between 9:00 a.m. and 5:00 p.m. EST, Monday through Friday, except Federal holidays.

• *Fax:* 202–493–2251.

• *Instructions:* You should identify the docket number for the petition request you are commenting on at the beginning of your comments. If you submit your comments by mail, please submit two copies. To receive confirmation that PHMSA has received your comments, please include a self-addressed stamped postcard. Internet users may submit comments at *www.regulations.gov.*

• *Note:* There is a privacy statement published; to review the statement, go to *www.regulations.gov,* scroll down to the bottom left to click ''Privacy & Security Notice.'' Comments, including any personal information provided, are posted without changes or edits to *www.regulations.gov.*

• *Confidential Business Information:* Confidential Business Information (CBI) is commercial or financial information that is both customarily and actually treated as private by its owner. Under the Freedom of Information Act (5 U.S. Code 552), CBI is exempt from public disclosure. If your comments in response to this notice contain commercial or financial information that is customarily treated as private, which you actually treat as private, and that is relevant or responsive to this notice, it is important that you clearly designate the submitted comments as CBI. Pursuant to 49 CFR 190.343, you may ask PHMSA to provide confidential treatment to information you give to the agency by taking the following steps: (1) mark each page of the original document submission containing CBI as ''Confidential''; (2) send PHMSA a copy of the original document with the CBI deleted along with the original, unaltered document; and (3) explain why the information you are submitting is CBI. Submissions containing CBI should be sent to Mr. Lee Cooper, 1200 New Jersey Avenue SE, DOT: PHMSA–PHP–80, Washington, DC 20590–0001. Any commentary PHMSA receives that is not specifically designated as CBI will be placed in the public docket.

• *Privacy Act:* DOT may solicit comments from the public regarding certain general notices. DOT posts these comments, without edits, including any personal information the commenter provides, to *www.regulations.gov,* as described in the system of records notice (DOT/ALL–14 FDMS), which can be reviewed at *www.dot.gov/privacy.*

• *Docket:* For access to the docket to read background documents or comments received, go to *www.regulations.gov.* Follow the online instructions for accessing the dockets. Alternatively, you may review the documents in person at the street address listed above.

**FOR FURTHER INFORMATION CONTACT:**

*General:* Mr. Lee Cooper by phone at 202–913–3171 or by email at *lee.cooper@dot.gov.*

*Technical:* Mr. Thach Nguyen by phone at 909–262–4464 or by email at *thach.d.nguyen@dot.gov.*

**SUPPLEMENTARY INFORMATION:** PHMSA is evaluating a petition from Gexcon U.S., Inc. (Gexcon) requesting approval, pursuant to 49 CFR 190.9, authorizing use of its EFFECTS v12.2.0 (EFFECTS v12.2) software as an alternate model for calculating, pursuant to 49 CFR 193.2059, the flammable vapor-gas dispersion exclusion zones for 49 CFR part 193-regulated LNG facilities.

# EXHIBIT B

Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt (filed Nov. 6, 2026), with proof of filing

**BEFORE THE UNITED STATES DEPARTMENT OF TRANSPORTATION**
**PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION**
**OFFICE OF CHIEF COUNSEL**

| | |
|---|---|
| In the Matter of:<br>Hazardous Materials: Notice of Administrative Determination of Preemption for Common Law Tort Claims Concerning the Transportation of Gasoline<br>Applicant: Exxon Mobil Corporation | PD-42(R)<br>Docket No. PHMSA-2025-0777<br>91 Fed. Reg. 57,439 (Sept. 9, 2026) |

**NOTICE OF PARTIAL WITHDRAWAL OF PETITION FOR RECONSIDERATION BY HARRINGTON WATT AND GRACE WATT**

Petitioners Harrington Watt and Grace Watt, through undersigned counsel, withdraw from the Petition for Reconsideration of Peter C. Singh, Chrismae Singh, Harrington Watt, Grace Watt, and Kenneth Vieldhouse, filed September 29, 2026, under 49 C.F.R. § 107.211 (Docket No. PHMSA-2025-0777-0038). This withdrawal is effective upon filing.

The Petition for Reconsideration remains pending as to Peter C. Singh, Chrismae Singh, and Kenneth Vieldhouse, who continue to seek reconsideration on all grounds stated in it.

This notice does not waive any right of Harrington Watt or Grace Watt to judicial review under 49 U.S.C. § 5127.

Petitioners ask that this notice be posted to Docket No. PHMSA-2025-0777.

Dated: November 6, 2026

Respectfully submitted,
LOCKS LAW FIRM
/s/ Andrew J. DuPont
Andrew J. DuPont
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, Pennsylvania 19106
(215) 893-3425 · adupont@lockslaw.com
Kevin McGilloway · kmcgilloway@lockslaw.com
Anthony P. Mastroianni · amastroianni@lockslaw.com
Counsel for Petitioners Harrington Watt and Grace Watt

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2026, I caused the foregoing Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt to be filed with the Chief Counsel, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, East Building, PHC-1, 1200 New Jersey Avenue SE, Washington, DC 20590-0001, by email to phmsachiefcounsel@dot.gov and by facsimile to (202) 366-7041.

I further certify that on November 6, 2026, I caused a copy of the Notice to be served by first-class United States mail, postage prepaid, on the persons and entities listed below:

Ilana H. Eisenstein
Counsel for Exxon Mobil Corporation
DLA Piper LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103

The Honorable Bruce J. Kaplan
Civil Presiding Judge
Middlesex County Courthouse
56 Paterson Street
New Brunswick, NJ 08901

Jeffrey Kluger
McGivney, Kluger, Clark & Intoccia, P.C.
290 W. Mt. Pleasant Avenue, Suite 4200
Livingston, NJ 07039

U.S. Chamber of Commerce
Attn: John Drake, Vice President, Transportation, Infrastructure, and Supply Chain Policy
1615 H Street NW
Washington, DC 20062-2000

American Fuel & Petrochemical Manufacturers
1800 M Street NW, Suite 900 North
Washington, DC 20036

Western States Petroleum Association
1415 L Street, Suite 900
Sacramento, CA 95814

International Brotherhood of Teamsters
25 Louisiana Avenue NW
Washington, DC 20001

Montana Department of Justice
Attn: Austin Knudsen, Attorney General
P.O. Box 201401
Helena, MT 59620-1401

Office of the Attorney General of Alabama
Attn: Steve Marshall, Attorney General
501 Washington Avenue
Montgomery, AL 36104

Alaska Department of Law
Attn: Cori Mills, Acting Attorney General
(PHMSA-2025-0777)
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501

Office of the Arkansas Attorney General
Attn: Tim Griffin, Attorney General
323 Center Street
Little Rock, AR 72201

Office of the Attorney General of Florida
Attn: James Uthmeier, Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050

Office of the Attorney General of Georgia
Attn: Chris Carr, Attorney General
40 Capitol Square SW
Atlanta, GA 30334

Office of the Attorney General of Iowa
Attn: Brenna Bird, Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319

Office of the Indiana Attorney General
Attn: Todd Rokita, Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204

Office of the Attorney General of Kentucky
Attn: Russell Coleman, Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

Louisiana Department of Justice
Attn: Liz Murrill, Attorney General
1885 North Third Street
Baton Rouge, LA 70802

Office of the Nebraska Attorney General
Attn: Mike Hilgers, Attorney General
1445 K Street, Room 2115
P.O. Box 98920
Lincoln, NE 68508

Office of the Attorney General of North Dakota
Attn: Drew Wrigley, Attorney General
600 East Boulevard Avenue
Department 125
Bismarck, ND 58505-0040

Office of the Oklahoma Attorney General
Attn: Gentner F. Drummond, Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Office of the Attorney General of South Carolina
Attn: Alan Wilson, Attorney General
P.O. Box 11549
Columbia, SC 29211

Office of the Attorney General of South Dakota
Attn: Marty Jackley, Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501

Office of the Utah Attorney General
Attn: Derek Brown, Attorney General
P.O. Box 142320
Salt Lake City, UT 84114-2320

Office of the Attorney General of West Virginia
Attn: John B. McCuskey, Attorney General
State Capitol Complex, Building 1, Room E-26
1900 Kanawha Boulevard East
Charleston, WV 25305

Claire Taigman
Megan M. Hunter
Earthjustice
311 South Wacker Drive, Suite 1400
Chicago, IL 60606

GPA Midstream Association
6060 American Plaza, Suite 700
Tulsa, OK 74135

Office of the Attorney General of Rhode Island
Attn: Nicholas Vaz, Special Assistant Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, RI 02903

Office of the Attorney General of New Jersey
Attn: Diego Huerta and Dianna Shin, Deputy Attorneys General
Division of Law, Environmental Enforcement & Environmental Justice Section
25 Market Street
P.O. Box 093
Trenton, NJ 08625

Office of the Attorney General of Connecticut
Attn: Jill Lacedonia, Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106

Delaware Department of Justice
Attn: Vanessa L. Kassab, Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

Office of the Attorney General of Maine
Attn: Jeffrey M. Skakalski, Assistant Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333

Office of the New York State Attorney General
Attn: Max Shterngel, Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005

Office of the Attorney General of Nevada
Attn: K. Brunetti Ireland, Chief of Special Litigation
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

Office of the Attorney General of Arizona
Attn: Mary M. Curtin, Senior Litigation Counsel
2005 North Central Avenue
Phoenix, AZ 85004

California Department of Justice
Attn: Rebecca Hunter, Deputy Attorney General
1300 I Street
Sacramento, CA 95814

Colorado Department of Law
Attn: Carrie Noteboom, Assistant Deputy Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

Office of the Attorney General for the District of Columbia
Attn: Lauren Cullum, Special Assistant Attorney General
400 6th Street NW, 10th Floor
Washington, DC 20001

Hawaii Department of the Attorney General
Attn: Wade H. Hargrove III, Deputy Attorney General
Health Division
465 S. King Street, Room 200
Honolulu, HI 96813

Office of the Illinois Attorney General
Attn: Joanna K. Brinkman, Complex Litigation Counsel
115 S. LaSalle Street
Chicago, IL 60603

Office of the Attorney General of Maryland
Attn: Steven J. Goldstein, Assistant Attorney General
200 Saint Paul Place
Baltimore, MD 21202

Office of the Attorney General of Massachusetts
Attn: Seth Schofield, Senior Appellate Counsel
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108

Michigan Department of Attorney General
Attn: Hadley E. Tuthill, Assistant Attorney General
Environment, Natural Resources, and Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909

Office of the Attorney General of Minnesota
Attn: Ryan Pesch and Alyssa Bixby-Lawson,
Special Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131

Oregon Department of Justice
Attn: Paul Garrahan, Attorney-in-Charge
Natural Resources Section
1162 Court Street NE
Salem, OR 97301-4096

Office of the Attorney General of Vermont
Attn: Mark Seltzer, Assistant Attorney General
Environmental Protection Unit
109 State Street
Montpelier, VT 05609

Office of the Attorney General of Virginia
Attn: Tillman J. Breckenridge, Solicitor General
202 N. 9th Street
Richmond, VA 23219

Office of the Attorney General of Washington
Attn: Colin O'Brien, Assistant Attorney General
Ecology Division
2425 Bristol Court SW, Second Floor
Olympia, WA 98502

American Petroleum Institute
Attn: Robin Rorick, Vice President, Midstream
200 Massachusetts Avenue NW
Washington, DC 20001

James Hunter Poole
Executive Chairman & Chief Executive Officer
Obelisk Tech Systems Inc.
875 Helicopter Road
Thomasville, GA 31757

American Association for Justice
Attn: Bruce Plaxen, President
777 6th Street NW, Suite 200
Washington, DC 20001

Energy Marketers of America
Attn: Rob Underwood, President
300 New Jersey Avenue NW, Suite 300
Washington, DC 20001

National Association of Manufacturers
Attn: Erica T. Klenicki, Vice President & Deputy
General Counsel
733 10th Street NW, Suite 700
Washington, DC 20001

SIGMA: America's Leading Fuel Marketers
1330 Braddock Place, Suite 501
Alexandria, VA 22314

Utility Solid Waste Activities Group (USWAG)
Attn: Daniel Chartier, Executive Director
c/o Associations International, LLC
2365 Harrodsburg Road, Suite A325
Lexington, KY 40504

American Federation of Labor and Congress of
Industrial Organizations (AFL-CIO)
815 Black Lives Matter Plaza NW
Washington, DC 20006

United Steelworkers (USW)
60 Boulevard of the Allies
Pittsburgh, PA 15222

American Highway Users Alliance
Attn: Andrew Stasiowski, President & CEO
P.O. Box 66291
Washington, DC 20035

American Trucking Associations
Attn: Brenna Lyles, Vice President, Safety Policy
80 M Street SE, Suite 800
Washington, DC 20003

Transportation Intermediaries Association
Attn: Daniel Hoff, Vice President of Government Affairs
1900 Duke Street, Suite 300
Alexandria, VA 22314

International Liquid Terminals Association
Attn: Leakhena Swett, President
655 15th Street NW, Suite 230
Washington, DC 20005

Alliance for Innovation and Infrastructure
3101 Wilson Boulevard, Suite 500, PMB 801
Arlington, VA 22201

New Jersey Motor Truck Association
Attn: Chris Lutick, Executive Director
160 Tices Lane
East Brunswick, NJ 08816

Fuel Merchants Association of New Jersey
Attn: Eric DeGesero, Executive Vice President
2376 South Avenue, 2nd Floor
Scotch Plains, NJ 07076

/s/ Andrew J. DuPont
Andrew J. DuPont
Counsel for Petitioners Harrington Watt and Grace Watt

# Docket No. PHMSA-2025-0777: Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt

1 message

---

**Andrew DuPont <adupont@lockslaw.com>** Fri, Nov 6, 2026 at 3:41 PM EST
To: phmsachiefcounsel@dot.gov, Kevin McGilloway <kmcgilloway@lockslaw.com>, Anthony Mastroianni <amastroianni@lockslaw.com>, Peter Singh Case <89a159048+matter1410200147@maildrop.clio.com>, Harry Watt Case Maildrop <89a159048+matter1531891546@maildrop.clio.com>, Kenneth Vieldhouse Case <89a159048+matter1375034956@maildrop.clio.com>

Dear Chief Counsel Coyle:

Attached for filing in Docket No. PHMSA-2025-0777 is the Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt, with its certificate of service. We are also sending it today by facsimile to (202) 366-7041. Please post the notice to the docket.

261315 261315

Please confirm receipt in writing by reply to this email.

--
Andrew DuPont
e. adupont@lockslaw.com t. 215.893.3425 Admitted to Practice in NJ, PA

---

📎 Watt Notice of Partial Withdrawal and Certificate of Service (Final 2026-11-06).pdf (133K)

# LOCKS LAW FIRM

| New Fax Message | |
|---|---|
| To: | 2023667041 |
| Fax Number: | 12023667041 |
| From: | Kelli Mackey |
| Date: | 11-06-2026 4:01 PM |
| Subject: | Notice of Partial WD of Pet for Reconsideration |
| No of Pages with Cover: | 8 |

Good afternoon, please see attached.

Have a good day.

The Curtis Center
601 Walnut St. | Suite 720 East
Philadelphia, PA 19106
(215) 893-0100 (Phone) | (215) 893-3444 (Fax)

675 Third Avenue | 8th Floor
New York, NY 10017
(212) 838-3333 (Phone) | (212) 838-3735 (Fax)

801 North Kings Hwy.
Cherry Hill, NJ 08034
(856) 663-8200 (Phone) | (856) 661-8400 (Fax)

*CONFIDENTIALITY NOTE**

*This transmission and the documents accompanying this transmission contain information from the

# LOCKS LAW FIRM

The Curtis Center · 601 Walnut Street, Suite 720 East · Philadelphia, Pennsylvania 19106 · (215) 893-0100
20 West 36th Street, 12th Floor · New York, New York 10018 · (212) 838-3333


November 6, 2026

**By Facsimile to (202) 366-7041**

Pages, including this cover: 7

Keith J. Coyle, Chief Counsel
Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
East Building, PHC-1
1200 New Jersey Avenue SE
Washington, DC 20590-0001

Re: Docket No. PHMSA-2025-0777, PD-42(R), 91 Fed. Reg. 57,439 (Sept. 9, 2026): Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt

Dear Chief Counsel Coyle:

Enclosed for filing in Docket No. PHMSA-2025-0777 is the Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt, with its certificate of service. We also filed it today by email to phmsachiefcounsel@dot.gov. Please post the notice to the docket and confirm receipt.

Respectfully,


Andrew J. DuPont
Locks Law Firm
The Curtis Center, 601 Walnut Street, Suite 720 East, Philadelphia, PA 19106
(215) 893-3425 · fax (215) 893-3444 · adupont@lockslaw.com
Counsel for Petitioners Harrington Watt and Grace Watt


Enclosure

**BEFORE THE UNITED STATES DEPARTMENT OF TRANSPORTATION**
**PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION**
**OFFICE OF CHIEF COUNSEL**

| | |
|---|---|
| In the Matter of:<br>Hazardous Materials: Notice of Administrative Determination of Preemption for Common Law Tort Claims Concerning the Transportation of Gasoline<br>Applicant: Exxon Mobil Corporation | PD-42(R)<br>Docket No. PHMSA-2025-0777<br>91 Fed. Reg. 57,439 (Sept. 9, 2026) |

**NOTICE OF PARTIAL WITHDRAWAL OF PETITION FOR RECONSIDERATION BY HARRINGTON WATT AND GRACE WATT**

Petitioners Harrington Watt and Grace Watt, through undersigned counsel, withdraw from the Petition for Reconsideration of Peter C. Singh, Chrismae Singh, Harrington Watt, Grace Watt, and Kenneth Vieldhouse, filed September 29, 2026, under 49 C.F.R. § 107.211 (Docket No. PHMSA-2025-0777-0038). This withdrawal is effective upon filing.

The Petition for Reconsideration remains pending as to Peter C. Singh, Chrismae Singh, and Kenneth Vieldhouse, who continue to seek reconsideration on all grounds stated in it.

This notice does not waive any right of Harrington Watt or Grace Watt to judicial review under 49 U.S.C. § 5127.

Petitioners ask that this notice be posted to Docket No. PHMSA-2025-0777.

Dated: November 6, 2026

Respectfully submitted,
LOCKS LAW FIRM
/s/ Andrew J. DuPont
Andrew J. DuPont
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, Pennsylvania 19106
(215) 893-3425 · adupont@lockslaw.com
Kevin McGilloway · kmcgilloway@lockslaw.com
Anthony P. Mastroianni · amastroianni@lockslaw.com
Counsel for Petitioners Harrington Watt and Grace Watt

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I caused the foregoing Notice of Partial Withdrawal of Petition for Reconsideration by Harrington Watt and Grace Watt to be filed with the Chief Counsel, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, East Building, PHC-1, 1200 New Jersey Avenue SE, Washington, DC 20590-0001, by email to phmsachiefcounsel@dot.gov and by facsimile to (202) 366-7041.

I further certify that on November 6, 2026, I caused a copy of the Notice to be served by first-class United States mail, postage prepaid, on the persons and entities listed below:

Ilana H. Eisenstein
Counsel for Exxon Mobil Corporation
DLA Piper LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103

The Honorable Bruce J. Kaplan
Civil Presiding Judge
Middlesex County Courthouse
56 Paterson Street
New Brunswick, NJ 08901

Jeffrey Kluger
McGivney, Kluger, Clark & Intoccia, P.C.
290 W. Mt. Pleasant Avenue, Suite 4200
Livingston, NJ 07039

U.S. Chamber of Commerce
Attn: John Drake, Vice President, Transportation, Infrastructure, and Supply Chain Policy
1615 H Street NW
Washington, DC 20062-2000

American Fuel & Petrochemical Manufacturers
1800 M Street NW, Suite 900 North
Washington, DC 20036

Western States Petroleum Association
1415 L Street, Suite 900
Sacramento, CA 95814

International Brotherhood of Teamsters
25 Louisiana Avenue NW
Washington, DC 20001

Montana Department of Justice
Attn: Austin Knudsen, Attorney General
P.O. Box 201401
Helena, MT 59620-1401

Office of the Attorney General of Alabama
Attn: Steve Marshall, Attorney General
501 Washington Avenue
Montgomery, AL 36104

Alaska Department of Law
Attn: Cori Mills, Acting Attorney General
(PHMSA-2025-0777)
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501

Office of the Arkansas Attorney General
Attn: Tim Griffin, Attorney General
323 Center Street
Little Rock, AR 72201

Office of the Attorney General of Florida
Attn: James Uthmeier, Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050

Office of the Attorney General of Georgia
Attn: Chris Carr, Attorney General
40 Capitol Square SW
Atlanta, GA 30334

Office of the Attorney General of Iowa
Attn: Brenna Bird, Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319

Office of the Indiana Attorney General
Attn: Todd Rokita, Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204

Office of the Attorney General of Kentucky
Attn: Russell Coleman, Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

Louisiana Department of Justice
Attn: Liz Murrill, Attorney General
1885 North Third Street
Baton Rouge, LA 70802

Office of the Nebraska Attorney General
Attn: Mike Hilgers, Attorney General
1445 K Street, Room 2115
P.O. Box 98920
Lincoln, NE 68508

Office of the Attorney General of North Dakota
Attn: Drew Wrigley, Attorney General
600 East Boulevard Avenue
Department 125
Bismarck, ND 58505-0040

Office of the Oklahoma Attorney General
Attn: Gentner F. Drummond, Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Office of the Attorney General of South Carolina
Attn: Alan Wilson, Attorney General
P.O. Box 11549
Columbia, SC 29211

Office of the Attorney General of South Dakota
Attn: Marty Jackley, Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501

Office of the Utah Attorney General
Attn: Derek Brown, Attorney General
P.O. Box 142320
Salt Lake City, UT 84114-2320

Office of the Attorney General of West Virginia
Attn: John B. McCuskey, Attorney General
State Capitol Complex, Building 1, Room E-26
1900 Kanawha Boulevard East
Charleston, WV 25305

Claire Taigman
Megan M. Hunter
Earthjustice
311 South Wacker Drive, Suite 1400
Chicago, IL 60606

GPA Midstream Association
6060 American Plaza, Suite 700
Tulsa, OK 74135

Office of the Attorney General of Rhode Island
Attn: Nicholas Vaz, Special Assistant Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, RI 02903

Office of the Attorney General of New Jersey
Attn: Diego Huerta and Dianna Shin, Deputy Attorneys General
Division of Law, Environmental Enforcement & Environmental Justice Section
25 Market Street
P.O. Box 093
Trenton, NJ 08625

Office of the Attorney General of Connecticut
Attn: Jill Lacedonia, Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106

Delaware Department of Justice
Attn: Vanessa L. Kassab, Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

Office of the Attorney General of Maine
Attn: Jeffrey M. Skakalski, Assistant Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333

Office of the New York State Attorney General
Attn: Max Shterngel, Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005

Office of the Attorney General of Nevada
Attn: K. Brunetti Ireland, Chief of Special Litigation
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

Office of the Attorney General of Arizona
Attn: Mary M. Curtin, Senior Litigation Counsel
2005 North Central Avenue
Phoenix, AZ 85004

California Department of Justice
Attn: Rebecca Hunter, Deputy Attorney General
1300 I Street
Sacramento, CA 95814

Colorado Department of Law
Attn: Carrie Noteboom, Assistant Deputy Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

Office of the Attorney General for the District of Columbia
Attn: Lauren Cullum, Special Assistant Attorney General
400 6th Street NW, 10th Floor
Washington, DC 20001

Hawaii Department of the Attorney General
Attn: Wade H. Hargrove III, Deputy Attorney General
Health Division
465 S. King Street, Room 200
Honolulu, HI 96813

Office of the Illinois Attorney General
Attn: Joanna K. Brinkman, Complex Litigation Counsel
115 S. LaSalle Street
Chicago, IL 60603

Office of the Attorney General of Maryland
Attn: Steven J. Goldstein, Assistant Attorney General
200 Saint Paul Place
Baltimore, MD 21202

Office of the Attorney General of Massachusetts
Attn: Seth Schofield, Senior Appellate Counsel
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108

Michigan Department of Attorney General
Attn: Hadley E. Tuthill, Assistant Attorney General
Environment, Natural Resources, and Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909

Office of the Attorney General of Minnesota
Attn: Ryan Pesch and Alyssa Bixby-Lawson, Special Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131

Office of the Attorney General of Vermont
Attn: Mark Seltzer, Assistant Attorney General
Environmental Protection Unit
109 State Street
Montpelier, VT 05609

Office of the Attorney General of Washington
Attn: Colin O'Brien, Assistant Attorney General
Ecology Division
2425 Bristol Court SW, Second Floor
Olympia, WA 98502

James Hunter Poole
Executive Chairman & Chief Executive Officer
Obelisk Tech Systems Inc.
875 Helicopter Road
Thomasville, GA 31757

Energy Marketers of America
Attn: Rob Underwood, President
300 New Jersey Avenue NW, Suite 300
Washington, DC 20001

SIGMA: America's Leading Fuel Marketers
1330 Braddock Place, Suite 501
Alexandria, VA 22314

American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)
815 Black Lives Matter Plaza NW
Washington, DC 20006

American Highway Users Alliance
Attn: Andrew Stasiowski, President & CEO
P.O. Box 66291
Washington, DC 20035

Oregon Department of Justice
Attn: Paul Garrahan, Attorney-in-Charge
Natural Resources Section
1162 Court Street NE
Salem, OR 97301-4096

Office of the Attorney General of Virginia
Attn: Tillman J. Breckenridge, Solicitor General
202 N. 9th Street
Richmond, VA 23219

American Petroleum Institute
Attn: Robin Rorick, Vice President, Midstream
200 Massachusetts Avenue NW
Washington, DC 20001

American Association for Justice
Attn: Bruce Plaxen, President
777 6th Street NW, Suite 200
Washington, DC 20001

National Association of Manufacturers
Attn: Erica T. Klenicki, Vice President & Deputy General Counsel
733 10th Street NW, Suite 700
Washington, DC 20001

Utility Solid Waste Activities Group (USWAG)
Attn: Daniel Chartier, Executive Director
c/o Associations International, LLC
2365 Harrodsburg Road, Suite A325
Lexington, KY 40504

United Steelworkers (USW)
60 Boulevard of the Allies
Pittsburgh, PA 15222

American Trucking Associations
Attn: Brenna Lyles, Vice President, Safety Policy
80 M Street SE, Suite 800
Washington, DC 20003

Transportation Intermediaries Association
Attn: Daniel Hoff, Vice President of Government Affairs
1900 Duke Street, Suite 300
Alexandria, VA 22314

International Liquid Terminals Association
Attn: Leakhena Swett, President
655 15th Street NW, Suite 230
Washington, DC 20005

Alliance for Innovation and Infrastructure
3101 Wilson Boulevard, Suite 500, PMB 801
Arlington, VA 22201

New Jersey Motor Truck Association
Attn: Chris Lutick, Executive Director
160 Tices Lane
East Brunswick, NJ 08816

Fuel Merchants Association of New Jersey
Attn: Eric DeGesero, Executive Vice President
2376 South Avenue, 2nd Floor
Scotch Plains, NJ 07076

/s/ Andrew J. DuPont
Andrew J. DuPont
Counsel for Petitioners Harrington Watt and Grace Watt